# Gustavus A. Wimmer *v.* Union Traction Company, Appellant.

*Street railways—Rate of fare—Ejection of passenger—Ordinance.*

An ordinance limited the rate of fare to be charged for a single continous ride over the entire line to a maximum which " shall not exceed the present fare." It was held that the legislative intent was not to diminish the amount collectible but only to prevent a subsequent increase of the rate.

It follows, therefore, that a passenger may not enter a car and make a continuous round trip over a given route for one fare, but that after passing the usual terminus where the return trip begins, another fare at the usual rate of five cents is demandable, and upon refusal of the passenger to pay he properly may be ejected from the car.

Argued Dec. 13, 1899. Appeal, No. 128, Oct. T., 1899, by defendant, from judgment of C. P. No. 1, Phila. Co., Dec. T., 1898, No. 351, on verdict for plaintiff. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER, W. D. PORTER and BEEBER, JJ. Reversed. Opinion by W. W. PORTER, J.

Trespass. Before BRÉGY, J.

It appears from the evidence that plaintiff boarded a western

bound car on Market street near Fifty-sixth street. The route of this car by the rules and practice of the company begins at Market street ferry and proceeds westward on Market street to Sixty-third; thence northward along Sixty-third to Vine, eastward on Vine by way of Haverford road and Forty-first street to Market, and thence along Market to the ferry. By the custom of the company a passenger is permitted to begin the eastern trip at Sixtieth and Market streets, although the western trip ends at Sixtieth and Vine streets; at Fifty-eighth and Vine streets plaintiff was requested by defendant to pay fare for going east and was put off on his refusal to do so, at the middle of the square, between Fifty-eighth and Fifty-seventh street. At the trial plaintiff also introduced evidence of the ordinance of the city of Philadelphia of March 31, 1893, ordinance book, page 83, which provided, inter alia, as follows:

" That the said railway company shall run cars over their entire line at intervals not exceeding five minutes, between the hours of 6 and 9 A. M. and 5 and 8 P. M., and at intervals not exceeding ten minutes, at all other hours of the day, excepting between the hours of 12 midnight and 5 A. M., when they shall run at least every hour. The rate of fare to be charged for a single continuous ride over the entire line shall not exceed the present fare, excepting between midnight and 5 o'clock A. M., when it shall not exceed ten cents."

Defendant introduced evidence tending to show that in 1892 and 1893, prior to the ordinance, if a man started from Forty-first and Market streets to go west on Market to Sixty-third, thence north on Sixty-third street to Vine street, thence eastwardly along Vine and Haverford road to Forty-first and Haverford avenue he would have to pay ten cents. This evidence was uncontradicted. The court declined to give binding instructions for defendant.

Verdict and judgment for plaintiff for $375. Defendant appealed.

*Error assigned* among others was in refusing to give binding instructions for defendant.

*Thomas Leaming,* with him *William Henry Lex,* for appel-

lant.—The learned court seemed to think that there was some significance in the language of the ordinance which requires that the rate of fare to be charged for a single continuous ride over the entire line should be the same as at the present time, i. e., 1893. Of course, all fares are regulated with regard to single passages, and they are also for continuous ones. A man with six children cannot carry them all for one fare: Nor can a passenger alight, transact his business, wait for the same car to come around, get upon it and proceed for one fare indefinitely. This is the only meaning of the words "single" and "continuous." The significance of the words "ride over the entire line" must be ascertained in the light of the rules, custom and practice which existed, particularly as those words are immediately qualified in the ordinance by the words "shall not exceed the present fare." The "present fare" over the entire line in 1893—if "entire line" could be tortured into meaning both going and coming—was ten cents.

If one fare were good for both coming and going here, then the same would be the case elsewhere, and a passenger could ride east on Market to the ferry, pass around the loop and return west to the point of starting, which is absurd. The fare requested of the plaintiff on March 29, 1896, was the "present fare" of 1893, and his contention, therefore, seems to be, as was stated in the beginning, vexatious and unnecessary.

*E. Spencer Miller*, with him *David Lavis*, for appellee.— The court was correct in interpreting the ordinance of 1893 as requiring that passengers be carried at one fare, for a single continuous ride from Fifty-seven and Market, to Forty-first and Haverford avenue.

It is an old and well settled rule that the court will lean against a corporation when interpreting a legislative contract with it: Phila. v. Ry. Co., 169 Pa. 269; Pittsburg Ry. Co. v. Bruce, 102 Pa. 23.

We urge that there is no cause for reversing that rule in the present case.

The effect of this provision of the ordinance, as to the West Philadelphia Passenger Railway Company, was to make the continuity of ride indicate the actual unit of charge, not the distance or direction of travel.

While the language is so plain that no apparent improbability or inconvenience to the company could, it would seem, defeat this signification, our position is the surer because this interpretation produces a natural and familiar result. Instances readily present themselves to our minds in which passengers are carried at a rate fixed and collected at entering the vehicle, and not varied by the length of stay there. Places of amusement, as for instance the recent Exposition in this city, often charge a certain sum when the visitor is admitted, and do not increase or diminish the amount according to the length of stay.

Our contention merely is that the charging of fares by the ride is a familiar method.

The object of the legislature was to prevent the company from making arbitrary divisions of its line. Perhaps the difficulty of devising a form of language which would have served this purpose effectively, and yet have been less stringent upon the railway company, prompted the use of the language—safe at least for the protection of the public—used in the ordinance of 1893. Those words were accepted by the passenger railway company.

OPINION BY WILLIAM W. PORTER, J., February 16, 1900:

Passenger railway companies not infrequently permit passengers to get upon a car as it approaches a terminus and to remain therein until the car rounds the loop of the terminus and proceeds in the reverse direction. For this no additional charge is made. It is, ordinarily, a reasonable and fair arrangement, such as the company has the power to make.

The plaintiff, at Fifty-sixth and Market streets, West Philadelphia, desired to go east to Forty-first and Haverford avenue. He entered a car going west on Market street. He remained therein until it rounded the loop of the terminus, at Sixty-third street, and proceeded eastwardly in the direction of his destination. He entered the car three or four blocks east of the point at which passengers going east were permitted to round the loop without paying additional fare. After the car had rounded the loop and was running east, a second fare was demanded of the plaintiff. He refused to pay. He was then requested to leave the car. For this ejection he has recovered damages.

It does not appear that the plaintiff rests his case upon the at-

tempted enforcement of any unreasonable rule of the company. He claims that he was entitled to transportation from the point at which he boarded the car westward, northward and eastward to Forty-first street and Haverford avenue for one fare, because of the obligation imposed by a city ordinance of March 30, 1893, granting the right to introduce the trolley system.  The particular provision is, "that the said railway company shall run cars over their entire line at intervals not exceeding five minutes between the hours of 6 and 9 A. M., and 5 and 8 P. M., and at intervals not exceeding ten minutes at all other hours of the day, excepting between the hours of 12 midnight and 5 A. M., when they shall run at least every hour.  The rate of fare to be charged for a single continuous ride over the entire line shall not exceed the present fare, excepting between midnight and 5 o'clock A. M., when it shall not exceed ten cents."

The plaintiff takes the position that he had the legal right, under the provisions of the ordinance, to enter a car at the terminus, at Forty-first and Market streets, and to remain therein until the car made its circuit and returned (practically) to its starting point.  This is the construction he desires us to place upon the last sentence of the ordinance above quoted.  It is the construction adopted by the court below.  It interprets the words " over the entire line " to mean that one fare shall entitle the passenger, if he remains in the car, to make a complete trip, "going and coming."  It may be said by way of suggestion that the ordinance fixes the rate of the fare, not the amount. Had the intention been to limit the maximum cash payment, it could have been easily expressed by saying that the fare should thereafter not exceed five cents for a single continuous ride over the entire line.  The use of the words "rate of fare " may therefore indicate that the councils had in mind the fact that more than one fare was then charged for a round trip, and intended that while the rate should not be increased, the payment of two fares for the round trip might still be required. However this may be, it is provided by the ordinance that the rate of fare "shall not exceed the present fare."  No intention is shown to diminish the amount of the fare collectible, but only to prevent a subsequent increase of the rate.  The words quoted are dominant.  They fix, as a maximum fare for a ride, the amount payable at the time of the passage of the ordinance.

If then the amount attempted to be collected from the plaintiff for his ride was not in excess of that collectible when the ordinance was approved, the plaintiff was bound to pay, and on failure to do so, he was properly ejected from the car.

The .only direct testimony as to the amount of the fare in March, 1893, is as follows:

"The Court: In 1892 and 1893, if a man started at Forty-first and Market streets to go to Forty-first and Haverford avenue, how much would he have to pay? *Answer:* He had to pay ten cents." · This evidence is direct to the point and is uncontradicted. The plaintiff was required to pay the amount of the fare which was charged for the ride when the ordinance of March 30, 1893, was approved. There was thus no.violation of the provision of the ordinance. This view of the case renders it unnecessary to consider the effect of the statute of limitations.

The judgment is reversed.

